IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
NO. 4:15-CR-23-BO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **O R D E R** |
| | ) | |
| RICARDO TYRONE WILLIAMS, JR., | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on defendant Ricardo Tyrone Williams's motion to dismiss the indictment for failure to state an offense. [DE 38]. The government has responded [DE 45] and the matter is ripe for ruling. For the following reasons, defendant's motion is GRANTED and the indictment is DISMISSED.

## BACKGROUND

On August 28, 2012, Mr. Williams was sentenced in Pitt County Superior Court for possession with intent to sell and deliver marijuana in violation of N.C. Gen. Stat. § 90–85(A). [DE 83–1]. This is defined as a Class I felony under North Carolina law. [*Id.*] The district court determined that defendant had a prior record level of II and imposed a sentence within the presumptive range of minimum durations. [*Id.*]. It appears that the court originally suspended the sentence in lieu of a term of probation, but then revoked defendant's probation on May 6, 2014, and reinstated the original sentence, ordering that Mr. Williams "be imprisoned for a minimum term of 8 months [and] for a maximum of 19 months in the custody of" the North Carolina Division of Adult Corrections. [*Id.*] Mr. Williams was given credit for 178 days spent in confinement. [*Id.*]

On April 8, 2015, a grand jury sitting in the Eastern District of North Carolina returned a true bill of indictment charging Mr. Williams with knowingly possessing a firearm "having been

previously convicted of a crime punishable by a term of imprisonment exceeding one (1) year," in violation of 18 U.S.C. §§ 922(g)(1) and 924. [DE 1]. The predicate crime underlying the charge is the aforementioned North Carolina state conviction. On May 27, 2015, defendant filed the instant motion seeking dismissal of the indictment on the grounds that his prior North Carolina conviction was not for a crime punishable by imprisonment for a term exceeding one year as required by 18 U.S.C. § 922(g)(1). [DE 21].

## DISCUSSION

Defendant argues that the indictment must be dismissed for failure to state an offense pursuant to Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure. To warrant dismissal of a count of the indictment on that basis, a defendant must "demonstrate that the allegations therein, even if true, would not state an offense." *United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004). The indictment clearly states all of the elements necessary for conviction under 18 U.S.C. § 922(g)(1). Defendant does not argue to the contrary. Instead, defendant argues that, as a matter of law, the government cannot prove that defendant has a prior conviction punishable by more than one year in prison. This challenge is more properly construed as one pursuant to Rule 12(b)(1), which allows the Court to rule on "any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1); *see also Thomas*, 367 F.3d at 197. "A defense is thus 'capable of determination' if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense. *United States v. Covington*, 395 U.S. 57 (1969). "The factual basis need not be established during the plea colloquy; rather, it may be established from anything that appears on the record." *Thomas*, 367 F.3d at 197. With that in mind, the Court considers defendant's motion.

2

I. North Carolina Structured Sentencing and the Justice Reinvestment Act of 2011

North Carolina uses a structured sentencing scheme to determine each defendant's sentence. *See* N.C. Gen. Stat. § 15A–1340.10 *et seq.*. The scheme employs a grid in which the horizontal rows represent classes of felonies (classes A through I) and the vertical columns represent prior record levels based on a defendant's criminal history (levels I through VI). *Id.* § 15A–1340.17(c). Within each box on the grid are three ranges of minimum sentences: presumptive, mitigated, and aggravated. *Id.* A court may only choose a sentence within the mitigated range after making written findings in fact thereof and may only choose a sentence with the aggravated range if a jury determines that an aggravating factor is present. *Id.* § 15A–1340.16(a)(1), (c). After determining a defendant's minimum sentence via the grid, the court must impose the corresponding maximum sentence listed in § 15A–1340.17(d) for class F through I felonies or (e) for Class B1 through E felonies.

The Justice Reinvestment Act of 2011 (JRA or Act), which became effective on December 1, 2011, significantly changed North Carolina's structured sentencing scheme. 2011 N.C. Sess. Laws 192. On that date, all North Carolina felony maximum sentences were modified to include a mandatory nine month term of post-release supervision. *See* Articles 81D and 84A of the North Carolina Criminal Procedure Act, N.C. Gen. Stat. §§15A–1340, *et seq.*; 15A–1368 *et seq.*. The nine month period cannot be served in prison as punishment for the crime of conviction. The JRA provides that "a prisoner to whom [post-release supervision] applies *shall* be released from prison for post-release supervision on the date equivalent to his maximum imposed prison term . . . less nine months in the case of Class F through I felons . . . ." § 15A–1368.2(a)( emphasis added). Moreover, "[a] prisoner shall not refuse post-release supervision." § 15A–1368.2(b). Despite the fact that this period must be imposed after release from prison, the

"maximum sentence" is expressed on the structured sentencing chart as a single number of months which includes the nine month post-release supervisory period. The chart does not distinguish between the term of imprisonment and the supervisory period.

II.  Federal Definition of a Crime Punishable by More than One Year

In *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011), the Fourth Circuit "changed the way [it] determines whether prior convictions for certain lower-level North Carolina felonies are punishable by more than one year in prison." *Miller v. United States*, 735 F.3d 141, 145 (4th Cir. 2013). Before *Simmons* was decided, courts looked at "the maximum *aggravated* sentence that could be imposed for that crime upon a defendant with the worst possible criminal history." *United States v. Harp*, 406 F.3d 242, 246 (4th Cir. 2005) (emphasis in original). Following *Simmons*, courts are required "to look at how much prison time the defendant was exposed to given his own criminal history at the time he was sentenced and any aggravating factors that were actually alleged against him." *Miller*, 735 F.3d at 146.

The Fourth Circuit based its holding on *Carachuri-Rosendo v. Holder*, 560 U.S. 563 (2010), in which the Supreme Court invalidated the "hypothetical approach" to classifying a defendant's prior conviction as an aggravated felony for purposes of the Immigration and Nationality Act. Instead of looking "to what might have or could have been charged," *Carachuri-Rosendo* requires courts to determine whether the defendant was "*actually convicted* of a crime that is itself punishable as a felony under federal law," rather than whether he hypothetically could have received felony treatment." *Id.* at 582 (emphasis in original). Following the reasoning in *Carachuri-Rosendo*, the Fourth Circuit held that "the 'mere possibility that [Simmons's] conduct, coupled with facts outside the record of conviction, could have authorized' a conviction of a crime punishable by more than one year's imprisonment

cannot and does not demonstrate that Simmons was actually convicted of such a crime." *Simmons*, 649 at 244–45 (quoting *Carachuri-Rosendo*, 560 U.S at 582). Since *Simmons* was decided, the Fourth Circuit has reiterated that "*Simmons*, and *Carachuri* before it, teach that we may not measure a defendant's maximum punishment based on a hypothetical charge, a hypothetical criminal history, or other 'facts outside the record of conviction.'" *United States v. Valdovinos*, 760 F.3d 322, 327 (quoting *Simmons*, 649 F.3d at 244); *see also United States v. Kerr*, 37 F.3d 333, 343 (4th Cir. 2013); *United States v. Bercian-Flores*, ---F.3d---, 2015 WL 2239325 at *6–7 (4th Cir. 2015).

III.  Application to Mr. Williams's Case

It is clear that *Simmons* precludes consideration of hypothetical charges and hypothetical criminal histories when determining a maximum sentence. *See, e.g., Valdovinos*, 760 F.3d at 327. It follows, therefore, that *Simmons* also precludes consideration of hypothetical future violations of post-release supervision when determining the maximum sentence to which a defendant was exposed. The wording of the statutory scheme and significant legal process and protections afforded a defendant in the revocation process demonstrate that state courts lack legal authority to impose what North Carolina law refers to as the "maximum" sentence at the time a defendant is sentenced under the JRA. The reality is that the sentencing judge can only impose the "maximum" sentence less the mandatory nine month post-release supervisory period.

The government makes much of the fact that determining a maximum sentence merely requires application of the *Simmons* "test," in which a court examines "the offense class, the offender's prior record level, and the applicability of the aggravated sentencing range." *Simmons*, 649 F.3d at 247 n.9. The government fails to acknowledge, however, that the Fourth Circuit set forth this test before the JRA became effective. Moreover, the heart of *Simmons* is not the rigid

5

application of a simple test. The heart of *Simmons*, and *Carachuri-Rosendo* before it, is that a federal court may not consider hypothetical factors in determining a maximum sentence. To apply the test without considering whether its application comports with the rationale behind it is a simplistic, short-sighted approach. The only way Mr. Williams could have been exposed to more than ten months' imprisonment is if he violated his post-release supervision. Making the assumption that he would involves consideration of a hypothetical scenario, which belies the rationale of *Simmons*.

The government analogizes North Carolina's post-release supervisory period to parole. Unlike parole, however, a defendant cannot choose to remain in prison rather than serve his post-release supervisory period. *Compare* N.C. Gen. Stat. § 15A—16368.2(b) (providing that a prisoner may not refuse to serve post-release supervision) *with id.* § 15A–1371(e) (providing that a defendant may refuse parole and elect to serve the remainder of his term of imprisonment). Moreover, parole is not part of the original sentence, but is instead a discretionary early release after serving a term of imprisonment. *See* N.C. Gen. Stat. § 15A–1371(d). Accordingly, the Court does not find the comparison to parole persuasive and declines to treat post-release supervision as analogous to parole.

Mr. Williams's prior conviction occurred in 2012, after the JRA became effective. He received a sentence of eight to nineteen months' imprisonment. The nineteen month maximum sentence included the mandatory nine months of post-release supervision. At the time Mr. Williams was sentenced, the maximum prison term to which he was exposed was ten months. There are no circumstances under which Mr. Williams could have lawfully been made to serve a term of imprisonment greater than ten months at the time he was sentenced. To hold that the maximum sentence to which he was exposed was nineteen months would presume a hypothetical


6
Case 4:15-cr-00023-BO Document 47 Filed 07/07/15 Page 6 of 7

violation of post-release supervision. Such a hypothetical scenario represents precisely the logic forbidden by the Fourth Circuit in *Simmons* and the Supreme Court in *Carachuri-Rosendo*. Consequently, his conviction is not a predicate felony for the purposes of 18 U.S.C. § 922(g)(1).

Because Mr. Williams's prior conviction was not punishable by more than one year in prison, the government cannot prove the requisite elements for conviction under § 922(g)(1).[1] Accordingly, there is no factual basis for the crime charged, and the indictment must be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Criminal Procedure. *See, e.g., United States v. Covington*, 395 U.S. 57 (1969); *United States v. Souder*, No. 1L08-CR-136; 1:08-CR-275, 2009 WL 88919 (M.D.N.C. Jan. 12, 2009) (collecting cases); *United States v. Levin*, 973 F.2d 463 (6th Cir. 1992).

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss [DE 38] is GRANTED, and the count in the indictment charging Mr. Williams is DISMISSED.[2] The defendant is ordered to be released from federal custody forthwith. The Clerk is DIRECTED to close the case.

SO ORDERED, this ___6___ day of July, 2015.

*/s/ Terrence W. Boyle/*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

---

[1] The federal courts in this state have come to different conclusions on this very issue, and it is currently pending before the Fourth Circuit. *See, e.g., United States v. Davis*, No. 5:14-CR-107-BR (E.D.N.C.) (rejecting government's position), *appeal pending at* No. 15-4208 (4th Cir.); *United States v. Barlow*, No. 1:14-CR-182-NCT-1 (M.D.N.C.) (accepting government's position), *appeal pending at* No. 15-4114 (4th Cir.).

[2] The two count indictment charges Mr. Williams in count one only. Count two charges a co-defendant whose charge will also be dismissed by separate order for the same reasons stated herein. Accordingly, the entire indictment will be dismissed, though this order addresses only the count charging Mr. Williams.